CHARLES S. HAGER V. D. G. DONOVAN.

No. 14,810   (88 Pac. 637.)

SYLLABUS BY THE COURT.

1. EXECUTORY CONTRACT—*Action for Breach—General Denial—
Evidence of Recission.* Where the plaintiff sues for dam-
ages for the breach of an executory contract for the sale of
personal property evidence of a subsequent annulment of
the contract by mutual consent is not admissible under a
general denial.

2. EVIDENCE—*Character Not Shown—Review of Order Sustain-
ing an Objection.* A ruling of the trial court sustaining an
objection to a question which might reasonably have been
thought to be directed to an issue not made by the pleadings
cannot be reversed merely because such question was sus-
ceptible of an answer which would have been competent upon
another matter, where no statement was made of the charac-
ter of the evidence sought to be elicited.

Error from Edwards district court; CHARLES E.
LOBDELL, judge. Opinion filed January 5, 1907. Af-
firmed.

*Prigg & Williams,* for plaintiff in error.

*A. C. Dyer,* and *F. Dumont Smith,* for defendant in
error.

The opinion of the court was delivered by

MASON, J.: D. G. Donovan sued Charles Hager for
damages for breach of contract, alleging that the de-
fendant, after having on July 19, 1904, agreed to sell
his entire wheat crop of that year to the plaintiff at
the price of seventy-three cents per bushel, had re-
fused to deliver it. Hager filed an answer consisting
of a general denial and allegations that on August 26,
1904, he had made a verbal contract with Emmett
Donovan, as the plaintiff's agent, to sell to the plaintiff
"certain wheat" at the market price; that he had de-
livered under such agreement wheat to the value of
$42.36, for which amount he asked judgment. The

reply included a verified denial "that Emmett Donovan was the agent of the plaintiff or in any manner empowered to vary or change the contract" set out in the petition, and an allegation that whatever he had done was in pursuance of the contract. Upon a trial the jury returned a verdict for the plaintiff for $367.18, upon which the court rendered a judgment which the defendant now seeks to reverse.

The evidence of the plaintiff directly supported the petition. The defendant testified admitting the making of a contract for the sale of his wheat crop, his version of it differing from the plaintiff's only in this, that he contended it was conditional upon his being able to get the wheat thrashed within thirty days. His defense was based on the theory that he had not been able to get the thrashing done within that time and that therefore the contract by its own terms had ceased to become operative. The assignments of error relate wholly to the giving and refusing of instructions and to the admitting and excluding of evidence. There was no dispute concerning the amount of wheat actually delivered or its value at the market price. The plaintiff maintained that this wheat was delivered under the contract set out in the petition; the defendant that it was delivered and accepted at the market price of eighty-five cents a bushel. The court directed the jury peremptorily to give the defendant credit for it at the latter rate. The reason for this is not important, since if any error was committed it must have been against the plaintiff. The further instructions were merely to the effect that if the jury found that the contract was made as claimed by the plaintiff they should find for him; otherwise for the defendant.

The substantial complaint of the defendant regarding the instructions is based on the refusal to submit the further question whether a new contract had been entered into in August between him and Emmett Donovan, as the plaintiff's agent, superseding the first one. This claim of error is not well founded, inasmuch as

no such issue was raised by the pleadings. The answer made no mention of the annulment of the first contract, or of any subsequent agreement concerning the same wheat; it merely said that in August the defendant agreed to sell to the plaintiff "certain wheat" at the market price, and under that arrangement delivered forty-nine bushels and fifty pounds. All controversy regarding the wheat so delivered was eliminated by the peremptory instruction referred to, and there remained for determination, as the court indicated, only the question, What were the terms of the original contract?

Complaint is also made of the refusal of the court to permit the defendant to prove that he used due diligence to get his wheat thrashed within thirty days. The offer was manifestly made for the purpose of showing that under the contract as he stated it the defendant was relieved from performance by circumstances beyond his control. Had the jury accepted his account of the matter this evidence would have been important, but it was rendered immaterial by a special finding that the contract was not made subject to his ability to get the wheat thrashed within the time stated.

The defendant made an effort, which may be assumed to have been successful, to establish that Emmett Donovan, who died before the trial took place, was the plaintiff's agent. Some evidence on the point was ruled out, but this assumption makes it unnecessary to consider whether its exclusion was proper.

Questions were then asked of the defendant as a witness concerning a transaction and a conversation he had had with Emmett Donovan. Objections to these questions were sustained, and the final complaint made relates to this ruling. The circumstances were such that the trial court might naturally have inferred, and probably did infer, that the purpose of the inquiry was to show that Emmett Donovan (who was the plaintiff's son) had agreed to set aside his father's

contract. If so, for reasons already stated it would have required an amendment to the pleadings to make the evidence competent. But it is argued that if the evidence had been admitted it might have tended to show what the first contract was. In order to lay the foundation for a review of the ruling upon that theory it was necessary to advise the trial court of the character of the testimony sought to be elicited. This was not done. These are two questions to which objections were sustained:

"What took place between you and Emmett Donovan at that time?"

"I will ask you whether or not at that time you had any conversation with Emmett Donovan as to the former transaction you had with his father?"

It was not apparent on the face of these questions what facts the defendant was seeking to establish by them, nor was any statement made as to what the answers were expected to be. Therefore their rejection cannot be made available on appeal. (*Marshall v. Marshall,* 71 Kan. 313, 80 Pac. 629.)

A general attack upon the soundness of the result reached is made upon the ground that a finding that the plaintiff had a contract with the defendant for all of the year's crop at the rate of seventy-three cents a bushel is inconsistent with a ruling compelling him to pay eighty-five cents a bushel for the small quantity of wheat which he actually received. No inconsistency is apparent. However binding the contract may have been, it was only an executory contract relating to the sale of personal property. It was not one the specific performance of which could be compelled. If after making it the defendant chose to repudiate it he had the privilege of doing so, subject to his obligation to respond to the plaintiff in damages for any injury occasioned thereby. The wheat still belonged to the defendant and was subject to his control. If he refused to let it go at the contract price and the plaintiff saw fit to accept it at its then market value the act ef-

fected no estoppel to claim damages for the refusal. Whatever evidential value the circumstance may have had was for the consideration of the jury.

The judgment is affirmed.